UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
and STATE OF FLORIDA,
ex rel. JAMES PEPIO,

        Plaintiff,

v.                          Case No. 8:18-cv-2931-T-33AAS

PROMETHEUS LABORATORIES,
INC.,

        Defendant.
_____/

**ORDER**

    This matter comes before the Court upon consideration of Defendant Prometheus Laboratories, Inc.'s Motion to Dismiss Second Amended Complaint (Doc. # 51), filed on September 25, 2020. Plaintiff and Relator James Pepio responded on October 9, 2020. (Doc. # 52). For the reasons set forth below, the Motion is granted.

**I.   Background**

    From August 2014 to January 2018, Pepio was employed as a Strategic Account Manager (SAM) by Prometheus, a corporation that promotes and sells pharmaceutical drugs throughout the United States. (Doc. # 48 at ¶¶ 14-18, 233-35). In April 2006, Prometheus "took over the sale and promotion of Proleukin," a drug approved by the FDA in 1998

1

"for the treatment of adults with metastatic renal cell carcinoma or metastatic melanoma." (Id. at ¶¶ 86, 104). "Prometheus promoted, sold, and distributed Proleukin under its contract with . . . [drug manufacturer] Novartis Pharmaceutical Corporation." (Id. at ¶ 105).

Proleukin, which "is administered in an inpatient setting only," has a number of potential severe or fatal adverse effects. (Id. at ¶¶ 87, 90). Proleukin is contraindicated for those with central nervous system (CNS) metastases, meaning that it is suggested that patients with such conditions not use the drug. (Id. at ¶ 93).

Although Proleukin was once the only "drug indicated for treatment of metastatic renal cell carcinoma, . . . over time newer drugs were introduced," including Torisel, Votrient, Yervoy, and Opdivo. (Id. at ¶¶ 106-14). These drugs have certain benefits over Proleukin. For example, Torisel and Yervoy can be used on patients with CNS metastases, unlike Proleukin. (Id. at ¶¶ 109, 113). Also, unlike Proleukin, Yervoy can be administered in an outpatient setting. (Id. at ¶ 113). Most notably, when used in combination, Yervoy and Opdivo have a 41.6% response rate. (Id. at ¶ 116). Proleukin, which has only been "studied and approved as a monotherapy," only has a 15% response rate. (Id. at ¶¶ 95, 117).

Pepio alleges that in or around March 2017, Prometheus's parent company, Nestlé Health Science, responded to "market pressures and internal demands to grow Proleukin sales in the face of shrinking market-share and relative efficacy," by appointing Bram Goorden as general manager of Prometheus. (Id. at ¶ 120). Goorden was tasked with "renegotiating the contract with Novartis and aggressively increasing sales of Proleukin." (Id.). Pepio alleges that in an effort to increase sales, Prometheus "unlawfully promoted Proleukin for intended uses that were not approved by the FDA," "caused the drug to be misbranded," and "intentionally misle[d] prescribers, end users, and patients into thinking Proleukin was comparable to newer, better drugs when [Prometheus] knew that it was not." (Id. at 128-30).

Pepio further avers that Prometheus engaged in an off-label marketing scheme by "directing employees to distribute and emphasize non-promotional and non-FDA approved publications," "directing sales employees to emphasize off-label information such as misleading response rates, information pertaining to combination therapy despite the fact [that] Proleukin was only approved for monotherapy uses, and information pertaining to off-label dosing, despite the fact [that] Proleukin was never approved by the FDA for such

use or such doses," "funding promotional programs and paying spokespeople to promote off-label uses of Proleukin," and "targeting physicians who [were] non-experts in renal cancer." (Id. at ¶ 132).

In addition to the aforementioned scheme, Prometheus allegedly "instructed providers to deliberately miscode [diagnosis-related group (DRG)] codes," a hospital-case classification system, "to allow the hospitals to receive[] higher reimbursement[s] from Government healthcare programs." (Id. at ¶ 206). And, "Prometheus [allegedly] participated in a fraudulent kickback scheme," in which "Prometheus made concerted efforts to influence specific oncologists to treat patients with Proleukin and, in exchange, Prometheus provided the physicians with free marketing in order to increase their referrals." (Id. at ¶¶ 217, 225).

Finally, Pepio alleges that after he realized, while working as a SAM for Prometheus, that a majority of the other SAMs "were engaging in . . . fraudulent schemes," and reported this up the chain of command at Prometheus, he was terminated in retaliation. (Id. at ¶ 236-46).

Pepio initially filed this qui tam suit under seal pursuant to the False Claims Act (FCA), 31 U.S.C. § 3730(b)(2), on December 3, 2018. (Doc. # 1). On August 1,

4

2019, Pepio filed an amended complaint. (Doc. # 7). In March 2020, both the State of Florida and the United States declined to intervene. (Doc. ## 14; 15). The Court then unsealed the complaint on March 30, 2020. (Doc. # 16).

On July 13, 2020, Prometheus filed a motion to dismiss the amended complaint. (Doc. # 34). With leave of Court, Pepio filed a second amended complaint on September 4, 2020. (Doc. # 48). The second amended complaint includes claims against Prometheus for presentation of false claims in violation of Section 3729(a)(1)(A) of the FCA (Count I), making and using false records and statements to get false claims paid in violation of Section 3729(a)(1)(B) of the FCA (Count II), retaliation in violation of Section 3730(h) of the FCA (Count III), and violations of the Florida FCA (Count IV). (Doc. # 48).

On September 25, 2020, Prometheus moved to dismiss the second amended complaint for failure to state a claim. (Doc. # 51). Pepio has responded (Doc. # 52), and the Motion is now ripe for review.

## II.  <u>**Legal Standard**</u>

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light

most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

The Federal Rules of Civil Procedure accord a heightened pleading standard to claims for fraud, requiring that they be pled with particularity. Fed. R. Civ. P. 9(b). Under Rule 9(b), the "plaintiff must allege: (1) the precise statements,

documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

This "requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." W. Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

## III. **Analysis**

Prometheus seeks to dismiss all counts of the second amended complaint. The Court will address each claim in turn.

### A. **Presentation of False Claims**

Prometheus first moves to dismiss Count I of the second amended complaint, for presentation of false claims in violation of Section 3729(a)(1)(A) of the FCA ("presentment claim"), because, among other things, Pepio has failed to plead his claim with the particularity required by Rule 9(b).

7

(Doc. # 51 at 1-2). Because the Court agrees that Count I must be dismissed with prejudice for failure to plead with particularity under Rule 9(b), the Court need only address this argument.

To establish a cause of action for a presentment claim, a plaintiff must sufficiently allege the following three elements: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." United States ex rel. Walker v. R&F Props. of Lake Cnty., Inc., 433 F.3d 1349, 1355 (11th Cir. 2005). "The purpose of the [FCA] is to encourage private individuals, who are aware of fraud being perpetrated against the Government, to bring such information forward[.]" Gibbs v. United States, 865 F. Supp. 2d 1127, 1138 (M.D. Fla. 2012). Thus, liability under the FCA "arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) ("The act of submitting a fraudulent claim to the government is the sine qua non of [an FCA] violation." (citation omitted) (emphasis omitted)).

A claim for relief under this section of the FCA must

meet Rule 9(b)'s heightened pleading standard. United States
v. Space Coast Med. Assocs., L.L.P., 94 F. Supp. 3d 1250,
1256 (M.D. Fla. 2015). In FCA cases, "the actual submission
of the claim must be pled with particularity and not simply
implied from the circumstances." Id. "[S]ome indicia of
reliability must be given in the complaint to support the
allegation of an actual false claim for payment being made to
the Government." United States ex rel. Clausen v. Lab'y Corp.
of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002).

Whether a relator's allegations under the FCA contain
sufficient indicia of reliability is determined based on the
totality of the circumstances. See United States ex rel.
Atkins v. McInteer, 470 F.3d 1350, 1358 (11th Cir. 2006) ("We
evaluate whether the allegations of a complaint have
sufficient indicia of reliability to satisfy Rule 9(b) on a
case-by-case basis."). "Providing exact billing data – name,
date, amount, and services rendered – or attaching a
representative sample claim is one way a complaint can
establish the necessary indicia of reliability that a false
claim was actually submitted." United States ex rel. Mastej
v. Health Mgmt. Assocs., Inc., 591 F. App'x 693, 704 (11th
Cir. 2014). "It is not enough for the [relator] to state
baldly that he was aware of the [defendant's] billing

9

practices, to base his knowledge on rumors, or to offer only conjecture about the source of his knowledge." Id. at 704-05 (citations omitted).

However, when the relator has "specialized knowledge about the alleged fraudulent billing practices, there may be sufficient indicia of reliability to allow [the relator] to avoid pleading specific information about particular bills." Space Coast, 94 F. Supp. 3d at 1257 (citing Hill v. Morehouse Med. Assocs., Inc., No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (finding that the Rule 9(b) standard was met despite the relator not providing dates of bills or client names because the relator worked in the defendant's billing department, identified confidential documents in the defendant's possession, and adequately described the defendant's billing practices)).

Here, Pepio alleges that Prometheus "knowingly presented, and caused to be presented, materially false and fraudulent claims for payment or approval to the United States, including claims to Medicaid and Medicare for reimbursement for Proleukin." (Doc. # 48 at ¶ 269-70). Regarding Prometheus's own submission of false claims, however, the second amended complaint is devoid of any proof. Nowhere in the complaint does Pepio allege that Prometheus

10

itself presented false claims to the United States.

Instead, Pepio only alleges that Prometheus *caused* false claims to be presented to the United States. Pepio avers that Prometheus's off-label marketing and other fraudulent schemes caused physicians to submit false claims for reimbursement to government healthcare programs. (Id. at ¶¶ 190-92, 203-05). Pepio also alleges that Prometheus deliberately instructed hospital employees to incorrectly code doses of Proleukin, causing false claims for reimbursement to be made to government healthcare programs. (Id. at ¶ 212-16).

However, Pepio provides no information about specific fraudulent bills or claims for reimbursement, dates of such bills or claims, or particular healthcare providers that have allegedly submitted these false claims to the government. (Doc. # 48). Although Pepio was employed by Prometheus as a SAM, he provides no evidence that he worked closely with or had any specialized knowledge of the providers' billing practices. Nor has Pepio provided proof of any providers' billing policies. See Atkins, 470 F.3d at 1358 ("No policies about billing or even second-hand information about billing practices were described, and not one copy of a single bill or payment was provided." (citation omitted)).

Because of this and considering that "a corporate

outsider likely does not have the required access to learn enough about [providers'] billing practices," Pepio has not alleged that fraudulent claims were submitted with a sufficient indicium of reliability. Mastej, 591 F. App'x at 704; see also Hopper v. Solvay Pharms., Inc., 588 F.3d 1318, 1326 (11th Cir. 2009) ("Here, . . . the relators do not allege personal knowledge of the billing practices of any person or entity. The complaint does little more than hazard a guess that unknown third parties submitted false claims for Medicaid reimbursement.").

Indeed, the instant case is analogous to Hopper v. Solvay Pharms., Inc., 588 F.3d 1318 (11th Cir. 2009). There, the Eleventh Circuit was presented with similar facts to this case, in that the relators brought a qui tam FCA suit against a pharmaceutical company, alleging that its off-label marketing campaign caused the government to pay fraudulent claims. Hopper, 588 F.3d at 1321. There, like here, the relator "failed to include specific allegations of the actual presentment of false claims." Id. at 1324 (citation omitted). The Eleventh Circuit held that, although the complaint did detail an illegal scheme, it did not "allege the existence of a single actual false claim," and was thus properly dismissed with prejudice. Id. at 1325-27.

Therefore, Pepio has failed to plead his presentment claim with the particularity required by Rule 9(b) and the Motion is granted as to this claim. <u>See</u> <u>Atkins</u>, 470 F.3d at 1360 (affirming dismissal of a presentment claim when the plaintiff provided no evidence of any fraudulent bill). Count I is dismissed with prejudice because Pepio has already twice amended his complaint, has already twice had the benefit of a detailed adversarial responsive pleading, has not requested leave to amend in his response to the instant Motion, and, considering his prior position as a salesperson at Prometheus, has not provided any indication that he has access to wholly separate medical providers' billing records. <u>See</u> <u>Mitchell v. Beverly Enters., Inc.</u>, No. 2:06-CV-540-VEH, 2007 WL 9717345, at *7 (N.D. Ala. Mar. 19, 2007) (dismissing presentment claim with prejudice for failure to plead with particularity), <u>aff'd</u>, 248 F. App'x 73 (11th Cir. 2007); <u>see also</u> <u>Wagner v. Daewoo Heavy Indus. Am. Corp.</u>, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

**B.**   **Making and Using False Records and Statements**

Next, Prometheus moves to dismiss Count II, Pepio's claim for making and using false records and statements to get false claims paid in violation of Section 3729(a)(1)(B) of the FCA ("use claim") for the same reasons as the presentment claim. (Doc. # 51 at 1-2). Because the Court agrees that Count II must be dismissed for failure to plead with particularity under Rule 9(b), the Court need only address this argument.

Section 3729(a)(1)(B) creates liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false claim or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). To prove a use claim, a plaintiff must sufficiently allege the following three elements: "(1) the defendant made (or caused to be made) a false statement[;] (2) the defendant knew it to be false[;] and (3) the statement was material to a false claim." United States ex rel. Phalp v. Lincare Holdings, Inc., 857 F.3d 1148, 1154 (11th Cir. 2017).

A statement is material if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Unlike presentment claims, in a use claim, "a relator is not required

14

to allege presentment because the statutory language includes no express presentment requirement." United States ex rel. Stepe v. RS Compounding LLC, 304 F. Supp. 3d 1216, 1224 (M.D. Fla. 2018) (citation omitted). However, a plaintiff must still "plead a connection between the alleged fraud and an actual claim made to the government." United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp., 915 F.3d 1158, 1166 (8th Cir. 2019) (quoting United States ex rel. Ibanez v. Bristol-Myers Squibb Co., 874 F.3d 905, 916 (6th Cir. 2017)).

As discussed in detail above, a claim for FCA liability, including under Section 3729(a)(1)(B), must meet the heightened Rule 9(b) pleading standard. See, e.g., Si v. Laogai Rsch. Found., 71 F. Supp. 3d 73, 85 (D.D.C. 2014) ("Federal Rule of Civil Procedure 9(b) applies to FCA fraud actions."). "To plead with particularity that [Prometheus] made or caused to be made a false statement, [Pepio] must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what [Prometheus] obtained as a result." United States ex rel. Wallace v. Exactech, Inc., No. 2:18-cv-01010-LSC, 2020 WL 4500493, at *17 (N.D. Ala. Aug. 5, 2020) (citing United States ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1225 (11th Cir. 2012)).

Here, despite this being his second amended complaint, Pepio has failed to specifically identify the false statements upon which his *use claim* relies. (Doc. # 48). Thus, "[t]he Court must guess which false statements mentioned in the factual allegations form the basis of [Count I versus Count II], or if the same statements are relied upon in both." Stepe, 304 F. Supp. 3d at 1225.

But even if the Court were able to determine which false records or statements applied to Count II, the Court holds that those statements are not pled with particularity under Rule 9(b) and are causally attenuated. Indeed, one statement that Pepio appears to offer is that "at a conference, [Pepio] witnessed Joseph Buonpastore, a SAM at Prometheus, place several . . . pamphlets containing off-label information on his event table and freely pass these materials to any physician who would accept them. . . . For several of these publications, Mr. Buonpastore tore off introductory warnings and disclosures that preceded the article and turned directly to the title page." (Doc. # 48 at ¶ 160-61).

In another statement, Pepio alleges that a spokeswoman for Prometheus, Peggy Zuckerman, "assured patients that Proleukin was safer and more responsive than the FDA clinical trial results." (Id. at ¶¶ 165, 168) ("The data gathered [in

16

the FDA trial] probably understated the value of the treatment. With patients carefully chosen generally in good health, . . . the response rate is higher than in the past."). The third purported statement that Pepio discusses is that "Prometheus urged employees to target urologists and recommend they refer patients directly to specific oncologists who operated in an inpatient setting and who were known by Prometheus to treat patients with high-dose IL2." (Id. at ¶ 176). Finally, Pepio offers that "Prometheus instructed providers to deliberately miscode DRG codes[.]" Id. at ¶ 206.

However, Pepio does not specify with particularity when Buonpastore's statement at the conference was made or how any of these four statements or records are false such that they were material to a false or fraudulent claim. (Doc. # 48). See United States ex rel Sharpe v. Am. Ambulance, No. 8:13-cv-1171-T-33AEP, 2017 WL 2840574, at *6 (M.D. Fla. July 3, 2017) ("Here, it is not clear under which theory of 'falsity' Sharpe is proceeding. Sharpe fails to allege within Count I what specific facts or certifications rendered the claims false and why they were false. Instead, the Complaint relies on bare legal conclusions[.]").

Indeed, Pepio fails to allege facts that show why or how

17

these alleged statements impacted the physicians' decisions
to prescribe Proleukin – especially "given that physicians
possess independent medical knowledge and choice of which
prescriptions to issue" – such that Prometheus's false
records were material to any false claim submitted to the
government. Stepe, 304 F. Supp. 3d at 1225; Jacobs v. Bank of
Am. Corp., No. 1:15-cv-24585-UU, 2016 WL 11653744, at *7 (S.D.
Fla. Dec. 20, 2016) (citing 31 U.S.C. § 3729(b)(4) (defining
a use claim's materiality requirement as having a "natural
tendency to influence, or be capable of influencing, the
payment or receipt of money or property.")).

    And, to the extent that Pepio's complaint is construed
as alleging a use claim on the basis of medical providers'
certification of compliance with the Anti-Kickback Statute or
other federal statutes, this arguments fails as well because
Pepio has not pled the existence of any such fraudulent bill
or claim with particularity under Rule 9(b). See Thornton v.
Nat'l Compounding Co., No. 8:15-cv-2647-T-36JSS, 2019 WL
2744623, at *19 (M.D. Fla. July 1, 2019) ("Although Relator
generally alleges that scheme that would result in false
statements, Relator does not allege that Defendants falsely
certified compliance in connection with these transactions.
. . . No factual allegations support [the] conclusion [that

false certifications were made].").

Thus, Pepio has failed to plead his use claim with the particularity required by Rule 9(b). See Strubbe, 915 F.3d at 1166 (dismissing a use claim because the complaint "fail[ed] to connect the false records or statements to any claim made to the government"). Accordingly, the Motion is granted with respect to Count II, which is dismissed with prejudice for the same reasons outlined above regarding Count I.

   C.   **Retaliation**

Promethus next moves to dismiss Count III, Pepio's claim for retaliation in violation of Section 3730(h) of the FCA, arguing that Pepio has failed to "show that Prometheus fired him for attempting to prevent a fraud on the government" and because off-label promotion does not equate to fraud against the government. (Doc. # 51 at 2-3).

"Section 3730(h) creates a cause of action for an employee . . . who 'is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and condition of employment because of lawful acts done. . . in furtherance of an action under [the FCA] or other efforts to stop [one] of more violations of [the FCA]." United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1089 n.7 (11th Cir. 2018) (citing 31

U.S.C. § 3730(h)(1)), aff'd, 139 S. Ct. 1507 (2019).

Thus, to state a cause of action for retaliation under the FCA, a plaintiff must allege the following two elements: "(1) [the employee] engaged in lawful acts in furtherance of an FCA action or endeavored to prevent at least one violation of the FCA; and (2) [the employee] was, as a result, subjected to some form of discrimination in the terms and conditions of her employment." United States ex rel. Aquino v. Univ. of Miami, 250 F. Supp. 3d 1319, 1335 (S.D. Fla. 2017) (citation omitted). "As to the first element, if an employee's actions are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a qui [tam] action by the employee, then the complaint states a claim for retaliatory discharge under [Section] 3730(h)." Id. (citing United States ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1304 (11th Cir. 2010)). To satisfy the second element, a plaintiff must allege "a causal connection between her protected conduct and the allegedly retaliatory actions [he] suffered." Mann v. Olsten Certified Healthcare Corp., 49 F. Supp. 2d 1307, 1316 (M.D. Ala. 1999).

A claim for retaliation under the FCA need only contain a short and plain statement under Rule 8(a) and need not meet the heightened pleading standard of Rule 9(b). Sanchez, 596

F.3d at 1304. Additionally, "a plaintiff need not prove an underlying FCA violation because . . . [Section] 3730(h) protects an employee's conduct 'even if the target of an investigation or action to be filed was innocent.'" United States ex rel. Bachert v. Triple Canopy, Inc., 321 F. Supp. 3d 613, 621 (E.D. Va. 2018) (quoting Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 416 (2005)).

However, Pepio's retaliation claim fails to state an FCA retaliation claim under Rule 8's lenient standard. In the second amended complaint, Pepio claims that he "documented his concerns about the fraudulent activity in a field report that he intended to submit to his supervisor," although that supervisor told him not to submit such a report. (Doc. # 48 at ¶ 237-38). Pepio then reported his concerns to two corporate officers, Jenny Alonzo and Cherrie Green, and an outside consultant, Kathleen Heffernan. (Id. at ¶¶ 240, 243). During a meeting with Alonzo in early December 2017, Alonzo "agreed to collaborate with [Pepio] . . . to conduct . . . additional compliance training." (Id. at ¶ 241). On January 18, 2018, Pepio was terminated. (Id. at ¶ 246).

Pepio had not yet filed a qui tam suit when he was terminated in early 2018. (Doc. # 1); see Ortino v. Sch. Bd.

of Collier Cnty., No. 2:14-cv-693-FtM-29CM, 2015 WL 1579460, at *2 (M.D. Fla. Apr. 9, 2015) ("The prototypical example of conduct protected by the FCA is the filing of an FCA claim.").

Further, Pepio does not specify which scheme – of the many he alleges in the second amended complaint – he brought to his employer's attention, or if he alerted them to any possible false claims filed by medical providers or anything that would offer sufficient notice thereof. (Doc. # 48 at ¶ 233-46); see United States v. Pfizer, Inc., 188 F. Supp. 3d 122, 139 (D. Mass. 2016) ("Protected conduct under the FCA is limited to activities that reasonably could lead to an FCA action; in other words, investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government. Reports of regulatory failures without a connection to fraudulent claims knowingly submitted to the government do not constitute protected conduct under the FCA." (citations omitted)).

Therefore, Pepio has failed to plausibly plead his retaliation claim. See United States ex rel. Oemar v. Glades Drugs, Inc., No. 15-81633-CIV-COHN-SELTZER, 2017 WL 6033550, at *3 (S.D. Fla. Oct. 26, 2017) (dismissing a relator's FCA retaliation claim because he "failed to plausibly allege that

he sought to prevent at least one violation of the FCA"); see also Elliott-Lewis v. Abbott Lab'ys, Inc., No. 14-cv-13155-IT, 2016 WL 9244128, at *5 (D. Mass. Mar. 28, 2016) (dismissing a retaliation claim regarding the plaintiff voicing concerns about the defendant's off-label marketing scheme because he did not allege that he investigated or reported actual false or fraudulent claims submitted to the government).

Accordingly, the Motion is granted with respect to Count III, which is dismissed without prejudice. See United States ex rel. Johnson v. Raytheon Co., 395 F. Supp. 3d 791, 799-800 (N.D. Tex. 2019) (dismissing retaliation claim without prejudice because the court could not reasonably conclude that the employer was aware of any protected activity under the FCA).

### D.   **Florida False Claims Act**

Finally, Prometheus moves to dismiss Count IV, Pepio's claim for violation of the Florida counterpart to the FCA, arguing that because the Florida FCA mirrors its federal counterpart, "Pepio's state-law claim must also fail." (Doc. # 51 at 21). It is true, and Pepio does not appear to dispute, that the Florida FCA mirrors the federal FCA. See United States ex rel. Schultz v. Naples Heart Rhythm Specialists,

P.A., No. 2:17-cv-237-FtM-29MRM, 2020 WL 2473456, at *6 (M.D. Fla. May 13, 2020) ("[T]hese sections of the Florida False Claims Act mirror their federal counterparts and are subject to the same Rule 9(b) pleading standards.").

Thus, for the same reasons that Pepio's federal FCA claims must be dismissed, so must his parallel state-law claims. See Sharpe, 2017 WL 2840574, at *7 (dismissing state law claims under the Florida FCA because the plaintiff's parallel federal claims did not satisfy the pleading standard). Therefore, the Motion is granted with respect to Count IV, which is also dismissed with prejudice.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Prometheus Laboratories, Inc's Motion to Dismiss (Doc. # 51) is **GRANTED.**

(2)  Counts I, II, and IV of the Second Amended Complaint (Doc. # 48) are **DISMISSED** with prejudice. Count III is **DISMISSED** without prejudice.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 22nd day of October, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE